**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **WAYNE EDWARDS,** | : | |
| **Plaintiff,** | : | **NO. 5:10-CV-294 (MTT)** |
| **VS.** | : | |
| **LARRY JACKSON, *et al*.,** | : | **Proceedings Under 42 U.S.C. §1983** |
| **Defendants.** | : | **Before the U.S. Magistrate Judge** |

**RECOMMENDATION**

On January 15, 2008, Plaintiff Wayne Edwards filed the above-captioned action pursuant to 42 U.S.C. § 1983 raising claims of: 1) deliberate indifference to his serious medical needs by Pulaski County Jail Administrator Larry Jackson and Pulaski County Sheriff Billy Cape; and 2) excessive use of force by Defendant Jackson. Doc. 1. Presently pending in this action are a Motion for Summary Judgment filed by the Defendants (Doc. 33), and a cross Motion for Summary Judgment filed by Plaintiff (Doc. 40). Because Plaintiff has failed to demonstrate any genuine dispute of material fact with regard to his claims, **IT IS RECOMMENDED** that Defendants' Motion be **GRANTED** and that Plaintiff's Motion be **DENIED**.

LEGAL STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted if "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of a material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). If the moving party meets this burden, the burden shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the moving party is not entitled to judgment as a matter of law. Id. at 324–26. If the evidence presented by the non-movant is "not significantly probative" or is "merely colorable," then summary judgment may be granted. Anderson, 477 U.S. at 249. In fact, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ." Celotex, 477 U.S. at 322.

## DISCUSSION

Plaintiff's claims allege two separate violations of his constitutional rights that occurred on two separate dates during his confinement in the Pulaski County Jail. In the first, Plaintiff claims that, in September of 2009, Defendants Jackson and Cape refused his requests for medical care for his complaints of back and chest pain and, as such, were deliberately indifferent to his medical needs. In the second, he contends that, on October 16, 2009, Defendant Jackson subjected him to cruel and unusual punishment through the improper use of a taser

## **Medical Deliberate Indifference**

### Factual Evidence

The record of evidence in this case consists of Plaintiff's deposition testimony, affidavits from the Defendants, an affidavit from the jail's physician, and relevant portions of Plaintiff's medical records. Plaintiff has also submitted a brief statement of material facts. The record is largely undisputed, and viewed in the light most favorable to Plaintiff, the evidence is insufficient to create a genuine issue of material fact.

The record shows that Plaintiff was confined in the Pulaski County Jail from January 30, 2009, until April 5, 2010. Plaintiff's Dep., pp. 22-23, Doc. 49. Defendant Jackson was the administrator of the jail. Medical care for the inmates in the Pulaski County Jail was being provided through an arrangement with the private practice of Dr. Guy Easterling. Easterling Aff.,¶4 (Doc. 36). Under the arrangement, an inmate could request medical attention by completing and submitting a medical request form. Because the Jail is "a relatively small facility," it was not uncommon for inmates simply to tell detention officers that they were in need of treatment. Jackson Aff., ¶ 19 (Doc. 37). In either case, the request was promptly forwarded to Defendant Jackson. Id. Upon receipt of the request, Jackson would phone Dr. Easterling and inform him of the nature of the inmate's complaints. Id. at 17. Dr. Easterling would respond by:1) providing treatment instructions over the phone; 2) asking that the inmate be transported to his office for examination; or, 3) traveling to the jail to personally examine the inmate. Easterling Aff. at ¶ 5.

According to the record, Plaintiff successfully used this system to obtain medical care and treatment for various conditions on several occasions during his confinement in the Pulaski County Jail. For instance, Plaintiff's medical records indicate that in February of 2009, he requested medical attention for a sore throat, lower back pain, and complaints of being achy and sore all over. Doc. 36-1. On February 18, 2009, Plaintiff was transported to Dr. Easterling's office where he was examined by Ashlie Pullen, a licensed nurse practitioner employed by Dr. Easterling. Id. Pullen diagnosed Plaintiff with inflammation of the middle ear and issued him prescriptions for Amoxicillin, Prednisone, Allegra D, and ear drops. Id. In addition, Pullen gave Plaintiff an injection of Toradol in response to Plaintiff's complaints of lower back pain. Id.

Plaintiff returned for a follow-up visit on March 4, 2009. During this visit, Plaintiff reported that he had finished his medications and that he was feeling better. Nevertheless, an examination

revealed that one of Plaintiff's ears was still infected. Doc.36-12. Pullen irrigated the infected ear and continued Plaintiff's prescription for Allegra D. Id.

Next, in September of 2009, Plaintiff sought medical attention for severe pain in his back and chest. Jackson phoned Dr. Easterling and conveyed Plaintiff's complaints. Easterling Aff., ¶12. During this conversation, Jackson also informed Dr. Easterling that Plaintiff was in custody on a cocaine related charge. Id. at ¶13. Out of concerns for addiction, Dr. Easterling directed Jackson to provide Plaintiff with aspirin or ibuprofen rather than a narcotic pain medication. Id. at ¶¶13-14. Pursuant to this recommendation, Jackson made sure that Plaintiff was given access to three ibuprofen pills four times a day. Jackson Aff., ¶31 (Doc.37). According to Plaintiff's Medication Log Sheet, he was offered this medication from September 26, 2009 through the end of October. Doc. 37-2, pp. 16-17. Plaintiff complained to Jackson that the ibuprofen was ineffective. Plaintiff's Dep., p. 48. The medical records show that Plaintiff took the ibuprofen for several days, then refused to accept it. Doc. 37-2, pp. 16-17.

In response to the Defendants' Motion, Plaintiff submitted his own Motion for Summary Judgment (Doc. 40) and a Statement of Material Facts (Doc. 45). As indicated above, the record also contains Plaintiff's sworn deposition testimony, submitted by Defendants, with certain sections specifically pointed to and identified by Defendants in support of their summary judgment motion.

## Analysis and Conclusion

To establish a violation of the Eighth or Fourteenth Amendment related to medical treatment, a prisoner must allege acts or omissions sufficiently harmful to evidence "deliberate indifference to a serious medical need." Estelle v. Gamble, 429 U.S. 97, 106 (1976). To show deliberate indifference, the prisoner must satisfy both an objective and a subjective component. Hill v. DeKalb Regional Youth Detention Center, 40 F.3d 1176, 1186 (11th Cir. 1994)), overruled in part on other grounds, Hope v. Peltzer, 536 U.S. 730 at 739 (2002), (citing Wilson v. Seiter, 501 U.S. 294 (1991)

(subjective component), Whitley v. Albers, 475 U.S. 312 (1986)(subjective component), and Rhodes v. Chapman, 452 U.S. 337 (1981)(objective component).

With regard to the objective component, a prisoner must allege both an objectively serious medical need that, if left unattended, poses a substantial risk of serious harm, and also that the response by the prison official to that need was poor enough to constitute an unnecessary and wanton infliction of pain. Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000). With respect to the subjective component, a prisoner must allege, and ultimately prove, three facts: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence. McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir.1999). As these requirements make clear, in the context of a 42 U.S.C. §1983 lawsuit, "mere accidental inadequacy, negligence in diagnosis or treatment, [and] even medical malpractice" are not actionable. Taylor, 221 F.3d at 1258.

Here, Plaintiff has failed to demonstrate an issue of material fact with respect to any element of his deliberate indifference claim against Defendants Jackson and Cape. Indeed, the evidence demonstrates that each time Plaintiff sought medical attention, his requests were promptly forwarded to Dr. Easterling. Moreover, it is also clear that as a result, Plaintiff routinely received medical attention and treatment for his various medical conditions, including those that arose in September, 2009. Accordingly, and in the absence of any evidence demonstrating that Defendants Jackson or Cape, through more than negligent conduct, disregarded any known risks of serious harm to Plaintiff, there are no genuine issues of material fact for a jury to determine. Thus, with regard to the instant claim, Defendants Jackson and Cape are entitled to summary judgment.

**Excessive Use of Force**

Factual Evidence

Plaintiff contends that Jackson used excessive force in using a taser to subdue Plaintiff during an incident on October 16, 2009. The facts relating to Plaintiff's claim of excessive force are derived from Plaintiff's deposition testimony, relevant parts of Plaintiff's medical records, and video footage of the incident at issue. This evidence, viewed in the light most favorable to Plaintiff, fails to establish a genuine issue of material fact and shows that Jackson is entitled to judgment as a matter of law.

The record shows that Jackson deployed the taser against Plaintiff in response to an incident in which Plaintiff began to strew trash and dump water on a common area floor after he was denied breakfast. On the morning of October 16, 2009, Plaintiff went to use the toilet while other inmates were lining up to receive their breakfast in the day room common area of Plaintiff's housing "pod." Plaintiff's Dep., p. 60. When Plaintiff returned from the toilet, the trustee and officer who delivered the breakfast trays were leaving to serve another pod. Id. at 62. The trustee told Plaintiff that he would return to give Plaintiff his breakfast after the other pods had been served. Id. When the officer and the trustee returned, however, Jackson instructed them not to give Plaintiff any breakfast. Id. at 63. At the time, Jackson was stationed in the control room just outside the day room.

When Plaintiff realized that he would not be served breakfast, he picked up a trash can and dumped its contents onto the floor of the day room in front of the control room window. Id. at 64. He then took the trash can to the shower. Several minutes later, the video shows, Plaintiff brought the trash can back from the shower, partially filled with water, and emptied it onto the floor in front of the control room window. Id. After throwing trash at the window, Plaintiff picked up a dustpan that was attached to an aluminum handle approximately two and a half to three feet long. Id. at 65. While Plaintiff was still holding the dustpan, Defendant Jackson entered the pod and deployed his

taser against Plaintiff. Jackson Aff., ¶¶48-50. The video shows that Plaintiff immediately fell to the ground. Plaintiff testified that when Jackson shot him, "it was like he tortured me with the taser because he kept his finger on the trigger." Plaintiff's Dep., p. 66.

Moments later, another correctional officer arrived on the scene and helped Jackson escort Plaintiff to a holding cell. Id. at 68. Once in the holding cell, the taser probes were removed and the affected areas of Plaintiff's skin were cleaned with alcohol. Id. at 68-69. Soon afterwards, Emergency Medical Personnel were summoned to evaluate Plaintiff. Id. Because Plaintiff's blood pressure was elevated, he was transported to Dr. Easterling's office for further evaluation. Id. at 70. Jackson accompanied Plaintiff to Dr. Easterling's office. When Dr. Easterling observed that Plaintiff had high blood pressure, Jackson stated, "I imagine it would be because I warmed him up pretty good." Id. at 73. When Plaintiff also complained of a headache, Jackson further stated, "I imagine . . . you would have a headache as hard as your head hit the wall." Id. at 71. Dr. Easterling prescribed Lisinopril for the high blood pressure and ibuprofen for "musculoskeletal chest wall discomfort." Easterling Aff. at ¶ 15 (Doc. 36).

Plaintiff returned to Dr. Easterling for a follow-up visit on November 16, 2009. Dr. Easterling observed that Plaintiff continued to have elevated blood pressure, and therefore concluded that Plaintiff's high blood pressure was the result of chronic hypertension rather than a temporary effect of the taser incident. Easterling Aff. at ¶ 21. Dr. Easterling renewed the prescription for Lisinopril and added a prescription for Doxazosin. Id. at 19. According to his medical records, Plaintiff received this medication throughout the remainder of his confinement at Pulaski County.

## Analysis

Jackson is entitled to judgment as a matter of law because the undisputed facts of the case, viewed in the light most favorable to the Plaintiff, show that the use of force was not excessive in the circumstances. Where a pretrial detainee claims that he has been subjected to an excessive force

in violation of his constitutional rights, the rights at issue are those provided for in the Fourteenth as opposed to the Eighth Amendment. Despite this distinction, the appropriate legal standard to be applied when analyzing such claims is essentially the same as that used when reviewing claims arising under the Eighth Amendment. Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th 2009). That is, to succeed on a claim that a defendant official's use of force violated his constitutional rights, a pretrial detainee must establish that the defendant acted with a malicious and sadistic purpose to inflict harm. Id.; see also Hudson v. McMillian, 503 U.S. 1, 7, 112 (1992).

In determining whether the force was applied maliciously and sadistically to cause harm, the court must consider: "a) the need for the application of force; b) the relationship between the need and the amount of force that was used; c) the extent of the injury inflicted upon the prisoner; d) the extent of the threat to the safety of staff and inmates; and e) any efforts made to temper the severity of a forceful response." Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir.2007). In the course of this analysis, the court must "give a 'wide range of deference to prison officials acting to preserve discipline and security,'" Id. at 1311 (quoting Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990)).

**a. Need for Application of Force**

The video in this case shows that Jackson did not enter the pod and deploy force until Plaintiff had escalated his protest to a level that required the restoration of order. When an inmate creates a disturbance, jailers are justified in using force to restore order. "Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding." Cockrell at 1311 (11th Cir. 2007) (citing Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990)). In this case, Plaintiff's increasingly disruptive conduct created a disturbance which, if allowed to continue, could have reached dangerous proportions. Plaintiff began his protest by simply dumping trash on the floor. Then he escalated the situation by filling a trash can with water, dumping water on the floor, and throwing trash at the window of the control

room. The video shows that the disturbance was allowed to go on for several minutes without intervention by officers. Jackson entered the room and deployed the taser only after Plaintiff began to brandish the dustpan. In such circumstances, some use of force was justified to restore order.

**b. Relation Between the Need and Amount of Force Used**

In the circumstances, Jackson's use of a taser was reasonable. Plaintiff's escalation of his protest, coupled with his failure to relinquish the dustpan when Jackson entered the pod, made it reasonable to believe that Plaintiff intended to continue the disturbance by using the dustpan as a weapon. Rather than risk a physical confrontation with the Plaintiff, Jackson was justified in using the taser quickly to restore order.

**c. Extent of the Injury Inflicted**

While the key question in an excessive force case involves the "nature of the force rather than the extent of the injury," the extent of the injury is still a relevant "factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation." Wilkins v. Gaddy, 130 S. Ct. 1175, 1176, 1178 (2010) (per curiam). The record does not indicate that Plaintiff suffered any significant injuries as a result of the use of the taser.

Plaintiff maintains that he has continually suffered from high blood pressure as a result of the incident. Despite the fact that Plaintiff was diagnosed with and has been receiving treatment for high blood pressure since the date of the incident, however, there is no evidence demonstrating that the condition was caused by the taser. In fact, Dr. Easterling has testified that, while such an incident could cause a sudden and temporary rise in blood pressure, the fact that Plaintiff continues to have high blood pressure indicates that his condition is the result of chronic hypertension, not the taser incident. Easterling Aff., ¶21. In view of Easterling's testimony, and absent any other evidence to the contrary, Plaintiff has failed to create a genuine issue of material fact as to the cause of his high blood pressure. The only other injuries Plaintiff describes are a headache resulting from the

fall to the ground and the small marks where the taser contacts attached to his body. The minor nature of Edwards' injuries indicates that Jackson used his taser in a good faith effort to restore order, not to maliciously and sadistically cause harm. Wilkins, 130 S. Ct. at 1178-1179.

**d. Extent of the Threat to the Safety of Staff and Inmates**

Under the circumstances, Plaintiff's conduct posed a substantial threat to the safety of jail staff as well as other inmates. Given the nature of Plaintiff's actions, a physical confrontation appeared imminent. Thus, as with any physical alterations that takes place in a common area of a jail, there was a corresponding threat of harm to Defendant Jackson, to the other inmates in the pod, and to Plaintiff himself.

**e. Efforts Made to Temper the Severity of a Forceful Response**

Jackson made an effort to temper the severity of his response. Almost immediately after the incident was over, Jackson helped Plaintiff to his feet, removed the taser probes, cleansed the affected areas with alcohol, summoned Emergency Medical Personnel, and had Plaintiff transported to Dr. Easterling's office. See Cockrell, *510 F.3d at 1312* ("[T]he fact that [the officers] immediately summoned medical assistance for Cockrell, 'temper[ed] the severity of [the] forceful response,' and makes it less likely that either of them was acting sadistically instead of in good faith." (quoting Whitley v. Albers, 475 U.S. 312, 320-21 (1986)).

Conclusion on Excessive Force Claim

In view of the above factors, and in the absence of any other evidence demonstrating that Defendant Jackson's use of a taser on Plaintiff was excessive or otherwise improper, there are no genuine issues of material fact for a jury to determine, and Defendant Jackson is entitled to judgment as a matter of law.

CONCLUSION

Because Defendants have shown that there are no genuine issues of material fact and that Defendants are entitled to judgment as a matter of law, **IT IS RECOMMENDED** that the Motion for Summary Judgment filed by Defendants Jackson and Cape be **GRANTED** and that Plaintiff's Motion for Summary Judgment be **DENIED**. Pursuant to 28 U.S.C. §636(b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the district judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

**SO RECOMMENDED**, this 30th day of January, 2012.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge